**UNITED STATES FIDELITY AND GUARANTY COMPANY,**
Plaintiff,

v.

Floyd MILLER, Trading and Doing Business as Floyd Miller Plumbing Company; Square Supply Company, a Corporation, Defendants,

and

**United States of America,**
Intervenor.

Civ. No. 1520.

United States District Court
W. D. North Carolina,.
Asheville Division.

Sept. 4, 1956.

Kingsland Van Winkle, Asheville, N. C., for plaintiff.

Uzzell & DuMont, Asheville, N. C., for defendant, Square Supply Co.

J. M. Baley, Jr., U. S. Atty., Asheville, N. C., for intervenor.

WARLICK, District Judge.

This is an Interpleader Suit, brought under Title 28, U.S.C.A., Sections 1335, 1397, 2361 and 2410 by plaintiff, United States Fidelity and Guaranty Company against one Floyd Miller who did business as the Floyd Miller Plumbing Company; the Square Supply Company and the United States. The amount in controversy exceeds the sum of $500.

From the evidence heard the following facts are found by the Court:

The plaintiff is a Maryland corporation. The defendant, Floyd Miller is a citizen of Haywood County in the Western District of North Carolina. The defendant, Square Supply Company is a Tennessee corporation.

Simultaneously with the institution of this action the plaintiff paid into the registry of this court the sum of $3,281.22, which is the basis of this controversy.

In March 1952 the Osceola Construction Company, a Florida corporation, was the successful bidder for the construction of a Federal housing project in Hogansville, Georgia, and as such prime contractor entered into a subcon-

tract with Floyd Miller, trading as the Floyd Miller Plumbing Company for the plumbing and heating work on said project, at the agreed price of $66,500. Thereupon plaintiff, on March 6, 1952, became surety for Floyd Miller and executed a performance bond in accordance with the terms and provisions of the Miller Act, Title 40, U.S.C.A. § 270a, guaranteeing, as the law would require, the faithful performance of his subcontract with the Osceola Construction Company and for the payment of all labor and material claims. Work on said subcontract began on April 1, 1952.

The defendant, Square Supply Company supplied the bigger portion of the building materials to Miller in the performance of his contract, and in June 1953 after all credits had been given, Miller was indebted to it for materials furnished to him and used in the work of his subcontract the sum of $14,133.98. At that time Miller had completed his contract except for several minor items, but was in default under his subcontract to material furnishers, and on notice being given to the original contractor, the Osceola Construction Company, the balance due Miller was paid to the plaintiff herein as his surety for the express purpose of complying with the terms of the bond of suretyship and the paying of all of the obligations due to those who supplied labor and materials. The check, dated December 15, 1953, being made payable to Floyd Miller Plumbing Company and the plaintiff, the United States Fidelity and Guaranty Company, and being in th sum of $5,536.09. This amount was arrived at by the accounting methods of the Osceola Construction Company. It was delivered to the plaintiff, and thereupon certified for payment.

That at the time of said notice and the resulting payment, Miller was indebted to the folowing three concerns for material furnished: The Square Supply Company; The Engineering and Equipment Company; The Nolan Company.

Miller refused to endorse the check for that he contended the amount did not represent that due by the construction company, insisting that it was some $1,-600 short. Finally and on June 17, 1954, and after much persuasion by all parties concerned, Miller endorsed the check in the following words: "Pay to the order of United States Fidelity and Guaranty Company, Atlanta, Georgia," and left it with the plaintiff, his surety, for the purposes for which it was intended.

This check was then forwarded to the home office of plaintiff in Baltimore, Maryland and deposited to its credit for disbursement. Subsequently plaintiff paid the claims in full of the Engineering and Equipment Company and the Nolan Company, and the amount deposited in the registry of the court represents the balance on hand from the payment received from the Osceola Construction Company.

Plaintiff continued to hold the balance of the funds obtained from the check, even in the face of repeated demands of defendant Square Supply Company for payment to it of the amount held.

On December 13, 1954 the District Collector of Internal Revenue levied upon this money in the hands of the plaintiff for tax liens theretofore filed against Miller for Federal Unemployment tax, and Withholding and Social Security tax, for various periods, as is shown by the evidence, all of which, under the law would be liens in favor of the United States against all property and rights to property, real and personal, belonging to Miller,—in the net amount of $5,860.-46, and interest.

The defendant Miller was properly served and failed to file an answer or otherwise plead, and made no appearance whatsoever in the action, obviously asserting no claim to the funds involved in this controversy.

After the action was filed by plaintiff the United States made a motion to dismiss the action in main as against it, and subsequently was granted leave to intervene as a party plaintiff and to file its complaint as such intervenor.

The question for determination is whether the defendant, Square Supply Company or the intervenor, the United States, is entitled to the remainder of the funds deposited originally with the plaintiff by the contractor and now held in the registry of this court or more simply stated, was the money herein over a property or property right belonging to Miller?

Under the Internal Revenue Code 1954, 26 U.S.C.A., § 6321, it is provided:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount * * * shall be a lien in favor of the United States *upon all property and rights to property, whether real or personal,* belonging to such person."

This is the applicable section of the law. Under that section nothing could be plainer than that a lien for federal taxes extend only to property and rights to property, real or personal, which belongs to the tax payer. The statute so provides.

This construction has been well nigh universally placed upon like circumstances by the courts. Cannon v. Nicholas, 10 Cir., 1935, 80 F.2d 934; United States v. Long Island Drug Co., 2 Cir., 1940, 115 F.2d 983; United States v. Warren R. Co., 2 Cir., 1942, 127 F.2d 134; United States v. Burgo, 3 Cir., 175 F.2d 196.

Further the courts have consistently held that a contractor or a subcontractor or his surety on default coming about, has no property rights in monies due under contracts for construction until and after performance is complete and all labor and materialmen have been paid in full. It is not disputed that Miller was in default in the performance of his subcontract and that he was and now is insolvent. He was indebted to at least three material furnishers and the amount that was due him by the original contract was far less than that owed by him to those who furnished the materials. This circumstance in itself worked a default on the part of Miller. Mr. Justice Cardozo, in a very able opinion, said:

"In what has been written we have assumed that the failure to pay materialmen was a default of such a nature as to impose a duty on the contractor to turn over the payments to the surety upon appropriate demand." Martin v. National Surety Co., 300 U.S. 588, 57 S.Ct. 531, 535, 81 L.Ed. 822.

Unquestionably Miller would have no interest whatever in the amount paid by the contractor to his surety, and evidently realizing such, has made no demand whatever. F. H. McGraw & Co. v. Sherman Plastering Co., D.C., 60 F. Supp. 504, affirmed 2 Cir., 149 F.2d 301; Great American Indemnity Co. v. United States, D.C., 120 F.Supp. 445; New York Casualty Co. v. Zwerner, D.C., 58 F.Supp. 473; American Surety Co. of New York v. Westinghouse Electric Mfg. Co., 296 U.S. 133, 56 S.Ct. 9, 80 L.Ed. 105; National Surety Co. v. County Board of Education, 4 Cir., 15 F.2d 993. Nothing could be clearer therefore than that he had no property or rights to property in said payment. Since that is a fact the government's levy on the fund in the hand of the surety in Baltimore would be ineffectual as against the claim of the defendant, Square Supply Company.

The government places its right to the fund herein under its levy and the lien created thereby, 26 U.S.C.A. § 6322, but since it is my opinion that the fund herein at no time was the property of Miller or that he had any right thereto, I am not impressed with this theory of the case as advanced by it.

I therefore conclude that the Square Supply Company is entitled to recover the fund now held in the registry of this court.

Counsel will submit decree carrying this into effect.