THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, a New York corporation, complainant,

*v.*

JOHN MARECZKO, defendant-respondent, and NELLIE MARESKO, defendant-appellant.

[Submitted May 26th, 1933. Decided September 27th, 1933.]

*Messrs. Sorg, Duncan & Bailey (Mr. George B. Bailey,* of counsel), for the defendant-appellant.

*Messrs. Precker & Precker,* for the defendant-respondent.

The opinion of the court was delivered by

HEHER, J.

The decree in this interpleader suit awarded to defendant-respondent, John Mareczko, the proceeds of a policy of insurance in the sum of $10,000, issued by complainant, on June 22d, 1929, upon the life of his brother, Paul. Appellant, the insured's wife, was the designated beneficiary. The right of insured to change the beneficiary was expressly reserved, and on December 2d, 1931, at his request, respondent was named beneficiary under a clause of the policy which provided that the—

"insured may (a) change and successively change the beneficiary hereunder, whether original or substitute, without the consent of such beneficiary. * * * The insured may declare the designation of any beneficiary to be irrevocable. During the lifetime of any irrevocably designated beneficiary the insured shall not have the right to revoke or change the designation of that beneficiary without the consent of such beneficiary filed with the Company at its Home Office. Every change of beneficiary or change from revocable or irrevocable designation must be made by written notice to the Company at its Home Office, accompanied by the policy, and shall take effect only when endorsed on this policy by the Company."

The insured's designation of his widow as beneficiary was not made irrevocable by declaration to the insurer, either written or oral, and the change of beneficiary, it is conceded, was effected in the manner provided by the quoted clause of the policy.

The insistence of appellant is (1) that there was a gift of the policy to her by her husband, accompanied by delivery, and that this gift had the attribute of irrevocability, notwithstanding the express reservation of the right to change the beneficiary; and (2) that the policy was issued pursuant to an oral agreement between them, whereby the insured agreed

to procure the policy of insurance, making appellant the beneficiary, in consideration of her promise to pay the premiums accruing thereon, and that in the circumstances the designation of appellant as beneficiary was irrevocable, notwithstanding the express reservation of such right. Appellant further insists that, in the event of her failure to establish a gift of the policy or the asserted agreement, she is equitably entitled to reimbursement for premiums alleged to have been paid by her.

The vice-chancellor concluded, and correctly in our opinion, that the proofs failed to establish a gift of the policy. Appellant insisted that the insured delivered the policy to her shortly after it was issued, and that it remained in her possession until it was surreptitiously removed from a bank safe deposit box rented in the name of her infant daughter on May 26th, 1931, when the insured departed on a trip to Russia. Until then the policy, she maintained, had been in her possession at home. This policy and other papers, so the appellant and her daughter testified, were placed in the safe deposit box by the daughter. The latter only had access to the box. The assured returned from Russia sometime in October or November, 1931, and died on January 25th, 1932. On the day of his death, appellant and her daughter discovered, so they testified, that the policy was not in the safe deposit box. The daughter said that in November, 1931, after her father's return, her mother suggested that she examine the contents of the safe deposit box, to "make sure the policy was there." She did so, and found it in the box. Appellant and her husband were then undoubtedly in the throes of bitter marital conflict. She separated from him on December 18th, 1931, without justification, it would seem, although she attempted to defend that course.

The undisputed evidence is that on December 2d, 1931, the insured had possession of the policy. He delivered it to the insurer, at its home office, for the purpose of having respondent designated as beneficiary. Earlier on that day he informed an agent of the insurer that he desired to change the beneficiary, and was furnished with the form prescribed for

effecting such change, and was advised that he was required to present the policy at the home office for the formal endorsement thereon of the requested change. He was apparently unaware that an appropriate policy endorsement was requisite, and his prompt production of it establishes possession in him. On December 7th, 1931, the insurer mailed the policy, with the requested change of beneficiary endorsed thereon, to respondent. The bank records disclosed the visits made by appellant's daughter to the safe deposit box. The bank's rules required that she attest each visit by her signature, and she identified as genuine all signatures appearing on the registry card, except a signature, purporting to be hers, attesting a visit made on December 8th, 1931. Obviously, an imposter could not have taken the policy from the box on this day, for it had been delivered by the insured to the insurer on December 2d. The daughter denied that she had delivered the policy to her father, or made it possible for him to procure it. Her integrity is not questioned. She testified at the call of her mother, and there is no suggestion that she was a hostile witness. Thus the testimony of the widow that she possessed the policy was completely refuted.

The requisites of a valid gift *inter vivos* are: *first,* a donative intent on the part of the donor; *second,* an actual delivery of the subject-matter of the gift unless it be a chose in action, like a certificate of shares of stock or evidence of indebtedness, in which case the delivery must be of that variety of which it is most capable; and *third,* the donor must strip himself of all ownership and dominion over the subject-matter of the gift. *Taylor* v. *Coriell, 66 N. J. Eq. 262; Swayze* v. *Huntington, 82 N. J. Eq. 127, 133; affirmed, 83 N. J. Eq. 335; Besson* v. *Stevens, 94 N. J. Eq. 549, 556; Stevenson* v. *Earl, 65 N. J. Eq. 721; Nicklas* v. *Parker, 69 N. J. Eq. 743; affirmed, 71 N. J. Eq. 777; Conners* v. *Murphy, 100 N. J. Eq. 280.*

A policy of life insurance may, like other choses in action, be assigned as a gift *inter vivos,* and the assignment requires no consideration to support it. The mere delivery of the policy to the donee, without written assignment, but with a

clearly manifested intention to make a gift, is sufficient to satisfy the rule requiring delivery of the thing given. *Metropolitan Life Insurance Co.* v. *Haggerty, 109 N. J. Eq. 663; Prudential Insurance Co.* v. *Deyerberg, 101 N. J. Eq. 90; Travelers Insurance Co.* v. *Grant, 54 N. J. Eq. 208, 212.*

The proofs here utterly fail to establish either a donative intent or delivery of the subject-matter. The gift of a policy of life insurance must go into immediate and absolute effect, and be irrevocable. Although appellant insists that her designation as beneficiary was intended to be irrevocable, the policy does not so provide. The right to change the beneficiary was expressly reserved. The burden is upon appellant to prove the gift asserted. It is impossible to reconcile appellant's testimony that the policy was delivered to her, and placed in a safe deposit box with the insured's undisputed possession of it at the time he effected a change of beneficiary.

The next point presented for consideration is that, assuming the failure of proof of a valid gift *inter vivos,* the transaction possesses all the elements of a binding contract. But there is a like failure of proof of the asserted agreement to make appellant the irrevocable beneficiary, in consideration of her promise to pay the premiums. The evidence is not convincing that the premiums were paid from her earnings, as she claims. While she insisted that her husband was a spendthrift, and had never supported her, he was undoubtedly a wage-earner, and appellant's own testimony furnishes a basis for the conclusion that his earnings were applied to the satisfaction of the premiums. When her husband lost his employment, the premiums was reduced by a cancellation of the policy provisions for double indemnity and disability benefits. And there was evidence that, on the eve of his departure for Russia, he gave his wife $1,950, from which it is fairly inferable that he was thereby making provision for the payment of the premiums which would accrue during his absence, as well as for the satisfaction of necessary family obligations.

On an appeal from a decree in chancery great weight is given to a finding upon a question of fact, because the vice-chancellor, who sees the witnesses and hears them testify,

has better opportunities to judge their credibility than the reviewing court. *Cartan* v. *Phelps, 91 N. J. Eq. 312.*

It follows from the foregoing that appellant is not entitled to the premiums paid on the policy. Assuming payment by her, they were made while she was the nominated beneficiary, on a contract whose very essence was that it was subject to change at the will of the insured. *Spengler* v. *Spengler, 65 N. J. Eq. 176; Gifford* v. *Gifford, 93 N. J. Eq. 299; Metropolitan Life Insurance Co.* v. *Tesauro, 94 N. J. Eq. 637.* She therefore has no equitable lien upon the fund for reimbursement of the moneys thus paid.

Decree affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ.   14.

*For reversal*—None.