

Opinions of the United
States Court of Appeals
for the Third Circuit

12-10-2003

# Metro Life Ins Co v. Kubicheck

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4254

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Metro Life Ins Co v. Kubicheck" (2003). *2003 Decisions.* Paper 64.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/64

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-4254

METROPOLITAN LIFE INSURANCE COMPANY

v.

MARY T. KUBICHEK;
PATRICIA A. BRENNAN-KUBICHEK

Patricia A. Brennan-Kubichek,
Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil No. 01-cv-03174
District Judge:  The Honorable Anne E. Thompson

Submitted Under Third Circuit LAR 34.1(a)
November 21, 2003

Before: RENDELL, BARRY, and MAGILL,[*] <u>Circuit Judges</u>

(Opinion Filed: December 10, 2003)

OPINION

---

[*] The Honorable Frank J. Magill, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

BARRY, <u>Circuit Judge</u>

## I. BACKGROUND

The parties are familiar with the facts of this case, and, thus, we will provide but a brief summary of those facts at the outset, incorporating additional facts only as necessary to our discussion of the issues.

Metropolitan Life Insurance Company ("MetLife") carried the life insurance policies for William F. Kubichek ("decedent") as part of its group life insurance plan ("the plan") for the decedent's employer, General Motors Corporation ("GM"). On January 31, 1977, the decedent enrolled in the basic group life insurance policy ("basic policy"), and named his mother, Mary T. Kubichek ("Kubichek"), as the beneficiary. On May 5, 1977, the decedent enrolled in the optional group life insurance policy ("optional policy") for an additional $15,000 of insurance, and named Kubichek as the beneficiary.

The plan states that it will pay life insurance benefits to the beneficiary of the basic policy named on the proper form, and that the insured may change the beneficiary "at any time by filing written notice thereof on such a form with [GM] or [MetLife]." The same terms apply for designating and changing the beneficiary on the optional policy.

On October 9, 1983, the decedent married appellant Patricia A. Brennan-Kubichek ("Brennan"). On April 15, 1984, he used the proper form to designate Brennan as the sole beneficiary of his basic life insurance policy. The optional policy is not among those listed that he could have checked off or circled.

2

In 1990, the decedent was laid off by GM. When reinstated, he was purportedly required to resubmit documentation to reinstate his group life insurance benefits. On February 21, 1991, the Regional Personnel Administration Center sent him a letter requesting him to submit a copy of his birth certificate to secure his participation in the Salaried Retirement Program. Brennan submitted into evidence a letter dated February 24, 1991 – found, she said, by her among the household files, signed by the decedent, and sent to the Regional Personnel Administration Center – that enclosed the decedent's birth certificate, and stated:

> In addition I have asked on more then [sic] one occasion for a copy of my conformation [sic] of my benificiary [sic] designation to be sure my wife Patricia Kubichek is my sole benificiary [sic] on all policies, basic and optional life and all stock and pension information. I can not understand the problem with my request. Please forward this to the correct department and person so I may have a copy for my records.

According to MetLife, GM was unable to locate its copy of this letter. On November 19, 1991, the GM National Benefit Center sent a letter acknowledging receipt of the decedent's life insurance enrollment form, and indicating that he had again signed up for a $50,000.00 basic policy and an additional $15,000.00 optional policy. The letter does not indicate who the beneficiaries of these policies are.

The decedent passed away on September 24, 2000. On November 9, 2000, the full $116,300.00 in proceeds from the basic life insurance policy was paid to Brennan. Brennan and Kubichek submitted competing claims to MetLife for the $58,200.00 in

3

proceeds from the optional policy.[1]  Brennan alleges that the decedent changed the beneficiary designation for the optional policy from Kubichek to her in 1991, as evidenced by the correspondence she produced in this litigation.[2]

Unable to resolve this dispute, on July 5, 2001 MetLife filed an interpleader action, pursuant to FED. R. CIV. P. 22, in the District Court for the District of New Jersey, naming Brennan and Kubichek as defendants.  MetLife deposited the $58,200.00 with the Court for distribution to whichever party the Court saw fit.  MetLife also sought an injunction, pursuant to 28 U.S.C. § 2361, restraining Brennan and Kubichek from instituting any action related to the policies against it, GM, or the plan.  Brennan served on counsel her Answer, but never filed that Answer with the District Court.

On March 2, 2002, Kubichek moved for summary judgment on the ground that no documentation was produced showing that the decedent ever changed the beneficiary of his optional policy from her to Brennan.  On March 7, 2003, MetLife moved for summary judgment, asking for an order (1) releasing and discharging MetLife and GM from all liability to anyone arising out of a claim for the benefits from the decedent's life insurance policies; (2) restraining Kubichek and Brennan from instituting any lawsuits against either MetLife or GM seeking benefits or asserting damages or other claims

---

[1]The record does not indicate how, why, or when (after November 19, 1991) the decedent's insurance coverage rose to these amounts.

[2]Brennan also testified at her deposition that the decedent told her that she was the beneficiary of his life insurance policies, though she had no specific knowledge of him filling out a change of beneficiary form.

arising under or pursuant to the decedent's life insurance policies; and (3) awarding attorneys' fees and costs, payable from the policy proceeds. On May 22, 2003, the District Court granted both motions, awarding the proceeds to Kubichek, discharging MetLife, enjoining Kubichek and Brennan from suing MetLife or GM, and awarding MetLife attorneys' fees and costs to be paid from the proceeds of the optional policy.

Brennan appeals, arguing that genuine questions of material fact exist precluding summary judgment in Kubichek's favor, that she is entitled to summary judgment in her favor because the decedent substantially complied with MetLife's policy when designating her as the beneficiary of the optional policy, and that the Court should not have enjoined her from suing either MetLife or GM since both breached their fiduciary duties by allegedly losing the decedent's 1990 enrollment form. MetLife responded to Brennan's appellate brief; Kubichek did not.

The insurance plan is regulated by ERISA, 29 U.S.C. §§ 1001-1461, and therefore the District Court's subject matter jurisdiction was based on 29 U.S.C. § 1132(e)(2), as well as 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. DISCUSSION

A.    <u>Summary Judgment for Kubichek</u>

A court may enter summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

5

P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court must view all evidence, and draw all inferences therefrom, in the light most favorable to the non-moving party, here Brennan. See, e.g., Williams v. Morton, 343 F.3d 212, 216 (3d Cir. 2003). Our review of the District Court's grant of summary judgment is plenary. See, e.g., Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003).

In New Jersey, an insured may not change the beneficiary of a life insurance policy except by "substantial compliance" with the method provided in the contract between the insured and the insurer. Strohsahl v. Equitable Life Assurance Soc'y of the United States, 71 N.J.Super. 300, 304 (Ch. Div. 1962). "[A]n insured will be released from a strict observance of the terms of the policy if the court can be convinced that the insured made every reasonable effort to effect a change of beneficiary." Haynes v. Metro. Life Ins. Co., 166 N.J.Super. 308, 313 (App. Div. 1979).

The MetLife plan will pay life insurance benefits to the beneficiary of the basic policy named on the proper form, and the insured may change the beneficiary "at any time by filing written notice thereof on such a form with [GM] or [MetLife]." The same terms apply for designating and changing the beneficiary for the optional policy. Brennan's strongest evidence demonstrating that the decedent substantially complied with this policy is the letter of February 24, 1991, purportedly sent from the decedent to MetLife, asking

6

MetLife to confirm the change of beneficiary to Brennan.[3] This letter, if authentic, is a written expression of the decedent's desire to make Brennan the designated beneficiary for both policies. It also reports that the decedent made repeated efforts to effectuate this change.

Nevertheless, there is no evidence, however the decedent may have articulated his intentions in a letter, that he in fact substantially complied with MetLife's change of beneficiary policy. The letter itself is of questionable authenticity. Even if it were authentic, however, it would fall short of showing that the decedent did complete and submit the proper forms, or even that he tried to, and substantially did, do so. The November 19, 1991 letter from GM to the decedent, confirming his enrollment in the basic and optional policies, does not reveal in any way that the he changed his beneficiary designation; it merely shows that he renewed his enrollment following his furlough.

The cases cited by the District Court support this conclusion. For example, in Czoch v. Freeman, 317 N.J.Super. 273 (App. Div. 1999), the Court rejected as insufficient evidence of substantial compliance a vague oral expression of an intent to change beneficiaries. Id. at 284-89. While acknowledging that literal compliance with the insurer's change of beneficiary policy was unnecessary, the Court cited examples in

---

[3]Brennan also argues that the decedent, by way of the 1984 form, designated her at that time as the beneficiary for both policies. She argues that, because the 1984 form does not have a box to check for the optional policy, the decedent intended to change the beneficiary for all of his policies at that time. We are not persuaded by this reasoning.

7

which there were written agreements or judgments evidencing substantial compliance with the insurer's change of beneficiary policy. Id. The letter here does not approach the certainty of the examples cited in Czoch – e.g. a property settlement agreement between separated spouses, id. at 285-87 (citing Vasconi v. Guardian Life Ins. Co., 124 N.J. 338 (1991), and Seavey v. Long, 303 N.J.Super. 153 (App. Div. 1997)), and a divorce judgment naming a beneficiary, Czoch, 317 N.J.Super. at 286-87 (citing Prudential Ins. Co. v. Prashker, 201 N.J.Super. 553 (App. Div. 1985)). And although the decedent in Haynes substantially complied with his insurer's change of beneficiary policy, that case is distinguishable. In Haynes, the decedent filed the appropriate forms with the insurer, but did not submit the policies with these forms – and thereby comply fully – because the policies were in the possession of his estranged wife. Haynes, 166 N.J.Super. at 311.

In sum, Brennan has not demonstrated that the decedent substantially complied with MetLife's change of beneficiary policy to name her the beneficiary of his optional policy. We will affirm the District Court's granting of Kubichek's motion for summary judgment.

B.    MetLife/GM Injunction

Although an injunction issued in an interpleader action must not be overbroad, United States Fire Ins. Co. v. Asbestospray, Inc., 182 F.3d 201, 211 (3d Cir. 1999), our review of the District Court's decision to grant injunctive relief pursuant to 28 U.S.C. § 2361 is for an abuse of discretion. See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, PA

8

v. Karp, 108 F.3d 17, 23 (2d Cir. 1997).

Brennan, in her appellate brief, asserts her right to sue MetLife and/or GM for breach of fiduciary duty for losing or misplacing the documents relevant to this case – namely, the 1991 enrollment form on which she claims the decedent named her as the beneficiary of his optional policy. She contests the injunction with respect to GM in particular because it was not even a party to the interpleader action. MetLife, in rebuttal, argues that Brennan's alleged breach of fiduciary duty claims are compulsory counterclaims that she waived when she failed to assert them in the interpleader action.

FED. R. CIV. P. 13(a) states that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim ...." We recently summarized our standard in applying this Rule:

> For a claim to qualify as a compulsory counterclaim, there need not be precise identity of issues and facts between the claim and the counterclaim; rather, the relevant inquiry is whether the counterclaim "bears a logical relationship to an opposing party's claim." Xerox Corp. v. SCM Corp., 576 F.2d 1057, 1059 (3d Cir. 1978). The concept of a "logical relationship" has been viewed liberally to promote judicial economy. Thus, a logical relationship between claims exists where separate trials on each of the claims would "involve a substantial duplication of effort and time by the parties and the courts." Id. Such a duplication is likely to occur when claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties.

Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc., 292 F.3d 384, 389-90 (3d Cir. 2002).

Applying this standard, we agree with MetLife that Brennan's potential breach of fiduciary duty claims against MetLife and GM were compulsory counterclaims that should have been asserted in the interpleader action. Brennan's contention that MetLife and/or GM misplaced, mishandled, or lost the decedent's 1991 enrollment form clearly bears a logical relationship to the claims in that action – the existence of that form was the crucial issue in determining whether the decedent designated Brennan as the beneficiary of his optional policy. The District Court's examination of the relevant letters and testimony in that action, so to determine the proper beneficiary, would be largely duplicated in any breach of fiduciary duty action. Since Brennan's Answer in the interpleader action did not assert these counterclaims, those claims are barred by res judicata, and the District Court's injunction was not an abuse of discretion. The Fifth Circuit, we note, faced a similar issue in New York Life Ins. Co. v. Deshotel, 142 F.3d 873 (5th Cir. 1998), and came to the same conclusion.

We will affirm the injunction with respect to GM as well, despite it not being a party, because of the close relationship between MetLife and GM in this action. In Transamerica, supra, we held that the rationales supporting a liberal reading of "transaction or occurrence" in Fed. R. Civ. P. 13(a) should also apply to "opposing party," such that the potential counter-claimant is obligated to assert his or her counterclaim against even an unnamed party if it arises out of the same transaction or occurrence and if the unnamed party is the functional equivalent of the named party, is

controlling the litigation, or is an alter ego of the named party. <u>Transamerica</u>, 292 F.3d at 391. We reasoned that this application should mirror the understanding of the parallel actors in the res judicata context, such that "claims against parties in privity should be brought in the same action lest the door be kept open for subsequent relitigation of the same claims." <u>Id.</u> at 392. We also emphasized the importance of the potential counter-claimant knowing of the close relationship between the named and unnamed parties, as is the case here. <u>Id.</u> Applying <u>Transamerica</u> to this case, Brennan was obligated to bring her counterclaims against both MetLife and GM. Because she did not, her breach of fiduciary duty claims against both are barred by res judicata, and the grant of the injunction will be affirmed.

### C. MetLife's Costs and Fees

Having received attorneys fees and costs with respect to the proceedings in the District Court, MetLife now seeks attorneys fees and costs relating to Brennan's appeal, claiming that it is still an interpleader plaintiff with no interest in the disposition of the proceeds already deposited with the District Court.

A court has the discretion to award to an interpleader plaintiff attorneys fees and costs if the plaintiff is (1) a disinterested stakeholder, (2) who had conceded liability, (3) has deposited the disputed funds with the court, and (4) has sought a discharge from liability. <u>Septembertide Publ'g, B.V. v. Stein & Day, Inc.</u>, 884 F.2d 675, 683 (2d Cir 1989) (citing 3A MOORE'S FEDERAL PRACTICE ¶ 2.16[2] (2d ed. 1989)).

11

MetLife meets these criteria on appeal, just as it did for the proceedings in the District Court. Although MetLife surely has an interest in having us affirm the grant of the injunction, its participation in this appeal is merely a continuation of its role as a disinterested interpleader plaintiff that has discharged its obligations. Because we find no merit in Brennan's argument that the injunction was an abuse of discretion, MetLife is entitled to its costs and attorneys fees for this appeal.

TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.

/s/ Maryanne Trump Barry
Circuit Judge